# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re* Application of<br><br>RICHARD RANDALL GREEN,<br><br>             Applicant,<br><br>For an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery From the EXPORT-IMPORT BANK OF THE UNITED STATES For Use In Foreign Proceedings | Civil Action No. _____ |

**MEMORANDUM IN SUPPORT OF APPLICATION FOR
JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

Richard Randall Green (the "Applicant"), by and through his undersigned counsel, submits the following memorandum in support of his application pursuant to 28 U.S.C. § 1782 ("Section 1782") for judicial assistance to conduct discovery of respondent Export-Import Bank of the United States (the "Ex-Im Bank") for use in foreign litigation.

**I.    INTRODUCTION**

Applicant is a former non-executive director and Chairman of NewSat Limited (in liquidation) (receivers and managers appointed) ("NewSat") and Jabiru Satellite Limited (in liquidation) (receivers and managers appointed) ("Jabiru"). He is currently a defendant in a judicial proceeding entitled *Newsat Limited (In Liquidation)(Receivers and Managers Appointed) & Anor v. Adrian Maxwell Ballintine & Anor*, File No. VID51/2017, pending in the Federal Court of Australia (the "Australian Litigation"). The Australian Litigation was brought against him by the receivers and managers of NewSat and Jabiru (the "Plaintiff Companies"), who allege, among other things, that Applicant breached his fiduciary duty as a director when he "allowed" the Plaintiff Companies to enter into certain financing agreements with various

secured lenders — now, secured creditors of the Plaintiff Companies — for the purpose of funding the construction and launch of a commercial satellite.

In support of his defenses to the action filed against him in Australia, Applicant seeks narrowly-tailored document discovery from the Plaintiff Companies' secured creditors under the above-described financial agreements. More particularly, Applicant seeks documents and communications from the Ex-Im Bank concerning (a) the considerations that the Ex-Im Bank undertook in agreeing to provide the Plaintiff Companies with financing under the financing agreements; and (b) the Ex-Im Bank's ongoing considerations in agreeing to provide financing to the Plaintiff Companies, including the granting of waivers to the Plaintiff Companies under the financing agreements. These documents are relevant as they may show that the secured creditors, after having performed their due diligence, were satisfied that the Plaintiff Companies were capable of completing the satellite project and repaying their debt, and therefore counter the allegations of the plaintiffs in the Australian Litigation that no reasonable director would have allowed the Plaintiff Companies to enter into the financing agreements.

Applicant's Section 1782 application satisfies the three statutory requirements. First it is being brought in "the district in which [the] person resides or is found," 28 U.S.C. § 1782(a), because the Ex-Im Bank is headquartered in Washington, D.C. Second, Applicant seeks the discovery for "use in a proceeding in a foreign . . . tribunal," *id.*, namely the Federal Court of Australia, Victoria. Third, Applicant, as a litigant in the Australian Litigation, qualifies as an "interested person." *See id.*

Moreover, the factors identified by the U.S. Supreme Court to guide courts' discretion in analyzing applications under Section 1782 all favor granting Applicant's request. The Ex-Im Bank is not a participant in the foreign proceedings, and Section 1782 provides an effective

mechanism for obtaining the targeted discovery set forth in Exhibit B to the application. In addition, the Australian Federal Court is receptive to the document discovery sought by Applicant, which (as was previously stated) will provide the Australian court with information that is both useful and highly relevant to Applicant's defense. Applicant's request is not made to circumvent any limitation on discovery imposed by the Australian courts. Finally, the discovery request is narrowly tailored and is not unduly intrusive or burdensome.

Accordingly, Applicant respectfully requests that the Court grant this application pursuant to Section 1782, and permit Applicant to serve the subpoenas attached hereto as Exhibit B on the Ex-Im Bank.

## II. <u>JURISDICTION AND VENUE</u>

This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 in that this matter arises under Section 1782. This Court has personal jurisdiction over the Ex-Im Bank, as it maintains its corporate headquarters and principal place of business at 811 Vermont Avenue N.W., Washington, D.C. 20571.

## III. <u>FACTUAL BACKGROUND</u>

Applicant, a former non-executive director and Chairman of the Plaintiff Companies, is one of two defendants in the Australian Litigation. France Decl.,[1] ¶ 1 and Roman Decl.,[2] ¶ 3 and Exh. A. The Australian Litigation was brought by the receivers and managers of the Plaintiff Companies. France Decl., ¶ 3.

---

[1] "France Decl." and "France Declaration" refer to the Declaration of Bryan Michael France In Support of this Application for Judicial Assistance Pursuant To 28 U.S.C. §1782. The France Declaration was filed concurrently with this Application.

[2] "Roman Decl." and "Roman Declaration" refer to the Declaration of Eric Roman In Support of this Application for Judicial Assistance Pursuant To 28 U.S.C. §1782. The Roman Declaration was also filed concurrently with this Application.

In the Australian Litigation, the Plaintiff Companies allege that Applicant breached certain duties of care and diligence he had as a director ("fiduciary duties") when, during the period between January 2011 and July 2013, he and his co-defendant Mr. Ballintine purportedly caused or "allowed" the Plaintiff Companies to enter into five agreements by which the Plaintiff Companies obtained financing from certain secured lenders in order to pay for the construction and launch of a commercial satellite. *Id.*, ¶ 5-6. The five financing agreements at issue are: (i) the COFACE Facility Agreement; (ii) the Reserve Facility Agreement; (iii) the Ex-Im Bank Agreement; (iv) the Common Terms Agreement; and (v) the Security Trust Deed (collectively, the "Financing Agreements"). *Id.*, ¶ 8. All five of the Financing Agreements were executed by the Plaintiff Companies on July 4, 2013. *Id.*

The alleged breach, according to the plaintiffs, was that Applicant failed to give proper consideration to the viability of the satellite project and the ability of the Plaintiff Companies to execute on that project before causing or allowing the Plaintiff Companies to enter into the Financing Agreements. *Id.*, ¶¶ 10 and 12. That is to say, the plaintiffs allege that no reasonable director should have permitted the Plaintiff Companies to be bound by the terms of these Financing Agreements, which – given the financial condition or operational capabilities of the Plaintiff Companies at the time the Financing Agreements were being considered — were purportedly too onerous for the Plaintiff Companies to meet. The Plaintiff Companies' efforts to construct and launch the satellite eventually failed, and the Plaintiff Companies were placed into administration on April 17, 2015, and subsequently into liquidation, on August 7, 2015. *Id.*, ¶ 6.

The secured creditors under the Financing Agreements include, among others, the Ex-Im Bank. *See* France Decl., ¶ 7. As part of his defense, Applicant seeks to argue that the secured creditors performed due diligence prior to agreeing to enter into the Financing Agreements and

4

provide funding to the Plaintiff Companies. *Id.*, ¶ 12. The information that the secured creditors received from the Plaintiff Companies in the course of their due diligence efforts must have satisfied them that the Plaintiff Companies' satellite project was commercially viable, and that the Plaintiff Companies were capable of both implementing the project and repaying the debt they would be incurring under the Financing Agreements. *Id.* In addition, the secured creditors continued to provide financing throughout the course of the project, and even waived some of the requirements under the Financing Agreements in an effort to continue to do business with the Plaintiff Companies. *Id.*, ¶ 9. The basis for the secured creditors' decision to enter into the Financing Agreements with the Plaintiff Companies, as well as the factors they considered when continuing to finance the satellite project (including their consideration in making the decision to waive certain requirements set forth in the Financing Agreements), are all highly relevant to Applicant's defense, in that they tend to counter the plaintiffs' allegations that no reasonable director would have allowed the Plaintiff Companies to enter into the Financing Agreements. *Id.*, ¶ 12.

During the course of the Australian Litigation, Applicant requested production of documents concerning (a) the considerations the secured creditors undertook in agreeing to provide the Plaintiff Companies with financing under the Financing Agreements; and (b) the secured creditors' ongoing considerations in agreeing to provide financing to the Plaintiff Companies, including the granting of waivers to the Plaintiff Companies under the Financing Agreements. *Id.*, ¶¶ 13-15. Applicant made repeated efforts to obtain these documents from plaintiffs, as described in detail in paragraphs 16 to 20 of the France Declaration. However, Applicant was informed by the plaintiffs that the secured creditors — including the Ex-Im Bank — refused to produce or otherwise provide access to such documents to Applicant. *Id.*, ¶ 20. As

of the date of this declaration, the plaintiffs have failed to produce documents concerning the Financing Agreements from any of the secured creditors, including the Ex-Im Bank. *Id.*, ¶ 21.

On information and belief, these documents are in the possession of the Ex-Im Bank, which is located in the United States, and which either resides or is otherwise within this District. *Id.*, ¶¶ 14 and 22-23. Without the judicial assistance of the U.S. Federal District Court, Applicant will be unable to obtain the above-referenced documents from the Ex-Im Bank, as it is located in the United States and is outside the jurisdiction of the Australian courts. *Id.*, ¶ 24.

## IV. ARGUMENT

Congress fashioned Section 1782 to provide "broad assistance" to foreign tribunals. *United States v. Global Fishing, Inc.*, 634 F.3d 557, 563 (9th Cir. 2011). In order to obtain discovery under Section 1782, Applicant must first establish three basic statutory prerequisites. If these prerequisites are satisfied, the court shall consider several discretionary factors. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255-56 (2004).

Here, Applicant satisfies both the statutory prerequisites and the discretionary *Intel* prongs. The discovery Applicant requests is exactly the type of discovery that Congress contemplated when passing 28 U.S.C. § 1782. This application therefore should be granted.

### A. Applicant Satisfies Section 1782's Three Statutory Prerequisites

Section 1782(a) provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the

> testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

Discovery pursuant to 28 U.S.C. § 1782 has three statutory prerequisites. The statute may be properly invoked where: (1) the discovery is sought from persons residing or found in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *See HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 221–22 (D.D.C. 2015). Applicant satisfies all three requirements.

First, the Ex-Im Bank resides or is found in the District of Columbia for the purposes of Section 1782. The Ex-Im Bank maintains its corporate headquarters and principal place of business at 811 Vermont Avenue N.W., Washington, D.C. 20571. *See* Roman Decl., ¶ 10. On information and belief, the documents sought from the Ex-Im Bank are either located or readily accessible at this location. *See* France Decl., ¶ 23; and Roman Decl., ¶ 11 and Exh. H. Thus, it is clear that the Ex-Im Bank is "found" in this District for purposes of Section 1782. *See In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV. 1801 NRB, 2014 WL 3404955, at *4 (S.D.N.Y. July 9, 2014) (holding that corporation with headquarters in New York was found within that district for purposes of Section 1782) (internal citations and quotations omitted).

Second, there is no question that Applicant seeks discovery for use in a proceeding before a foreign tribunal as is required by Section 1782. Applicant seeks documents to be used to aid

his defense in the above-described Australian Litigation, to which he is a party-defendant. France Decl., ¶ 1, 13, and 20 to 25. That litigation is currently pending before a foreign tribunal, specifically, the Federal Court of Australia at Victoria. *Id.* This application therefore satisfies the second requirement of Section 1782.

As to the third requirement, as a party to the Australian Litigation, Applicant is clearly an "interested person" within the meaning of 28 U.S.C. § 1782. *See Intel Corp.,* 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the "interested person[s]" who may invoke § 1782 . . .").

Thus, all three of Section 1782's requisite prongs are satisfied.

### B. The Supreme Court's *Intel* Factors Strongly Favor Granting Applicant's Section 1782 Application

Once the statutory requirements are met, "the court should then determine whether to exercise its discretion to grant the request." *In re Barnwell Enterprises Ltd*, 265 F. Supp. 3d 1, 9 (D.D.C. 2017). In *Intel Corp.*, the U.S. Supreme Court identified four factors that "bear consideration" by district courts in exercising their discretion to grant a Section 1782 discovery application: (1) whether the person from whom discovery is sought is a party in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal to federal-court assistance; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country of the United States"; and (4) whether the request is unduly intrusive or burdensome. *Intel Corp.,* 542 U.S. at 264-65.

In this case, all four *Intel* factors weigh in favor of granting Section 1782 discovery.

### 1. The Ex-Im Bank Is Not a Party to the Underlying Australian Litigation.

The first *Intel* factor inquires into whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel,* 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid").

In the present case, the Ex-Im Bank is not a party to the Australian Litigation, and lies outside the jurisdictional reach of the Australian Federal Court. France Decl., ¶ 24. The Australian Federal Court therefore has no power to compel the Ex-Im Bank to produce the sought-after documents, and the Ex-Im Bank is not willing to voluntarily produce the requested documents. *Id.* In short, the documents that Applicant seeks from the Ex-Im Bank cannot be obtained for use in the Australian Litigation without Section 1782 assistance from this District Court. *Id.* For all these reasons, the first *Intel* factor is satisfied.

### 2. Applicant Seeks Highly Relevant Documents That Will Assist and Be Well Received by the Australian Federal Court.

The second *Intel* factor counsels courts to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In the absence, however, of "authoritative proof that the foreign tribunal would reject the evidence sought," a district court should err on the side of permitting discovery. *In re Veiga,* 746 F. Supp. 2d 8, 23–24 (D.D.C. 2010). Rather than deny a § 1782 request because it suspects that the evidence gathered would ultimately be rejected by the foreign tribunal, a U.S. district court should presumptively allow discovery to the extent that such a grant would promote the statute's goals of efficiency and comity. *See id* at 24.

There is nothing to suggest that the Federal Court of Australia would reject the

documents that are being sought after in this Section 1782 application.  There are, in fact, cases on record of Section 1782 applications seeking document discovery for use in an Australian court proceedings being granted in other Districts, with no indication that the Australian courts would reject such discovery.  *See, e.g., Norcast S.ar.l. v. Castle Harlan, Inc.,* No. 12 CIV. 4973 PAC, 2014 WL 43492, at *1 (S.D.N.Y. Jan. 6, 2014) (noting that the applicant in that case had previously filed a Section 1782 application seeking discovery to be used in an actual or proposed litigation in Australia and that the application was granted in part); *In re Application of Barnet*, No. 13 MISC. 214 RMB, 2014 WL 7409524, at *5 (S.D.N.Y. Dec. 30, 2014) (noting as part of the background of the dispute that the "Australian court ordered the Liquidators to submit evidence that had been disclosed in the 1782 proceeding by mid-March 2014"); *In re Futurecorp Int'l Pty Ltd.*, Case No. 3:12-mc-80267-CRB (LB), 2012 WL 5818288, at *3 (N.D. Cal. Nov. 15, 2012) (Supreme Court of New South Wales granted petitioner's request to take evidence in the Northern District of California, and the district court subsequently allowed discovery under section 1782).

In addition, Gilbert + Tobin Lawyers ("Gilbert + Tobin"), who are the solicitors representing Applicant in the Australia Litigation, have other experience with Section 1782 applications seeking documents for use in the Australian courts.  France Decl., ¶ 26.  Given the relevance of the sought-after documents to Applicant's defense (as explained in detail in the Factual Background section, *supra*), the Australian Federal Court has been advised that this application is being made.

### 3. This Application Does Not Conceal An Attempt to Circumvent Foreign Proof-Gathering Restrictions.

This application is not an attempt to "circumvent foreign proof-gathering restrictions" or other policies of Australia or the United States.  Rather, it is a good faith effort to access

probative and highly relevant evidence for use in the Australian Litigation.

A Section 1782 applicant is not required to seek discovery of the materials sought from the foreign tribunal before filing a Section 1782 application. *See In re Barnwell Enterprises*, 265 F. Supp. 3d at 13 (Section 1782 contains "no requirement . . . that a petitioner exhaust their discovery options in a foreign forum before seeking discovery here"); *HT S.R.L.*, 125 F. Supp. 3d at 225–26 (same); *In re Veiga*, 746 F. Supp. 2d at 24 (same). The information sought need not be discoverable or admissible in the foreign forum. *Intel*, 542 U.S. at 253 (holding that "§ 1782(a) does not impose . . . a [foreign-discoverability] requirement."); *In re Barnwell Enterprises*, 265 F. Supp. 3d at 13 ("[S]ection 1782 does not require that the material sought be discoverable or even admissible in the foreign proceedings.").

Where, as here, the foreign tribunal simply lacks jurisdiction to compel the respondent to provide evidence and applicants are not seeking to use Section 1782 for abusive purposes, the third *Intel* prong is satisfied.

**4. The Discovery Sought Is Narrowly Tailored to the Needs of the Australian Litigation, and Is Neither Burdensome Nor Intrusive.**

Like all federal discovery, the proper scope of discovery under Section 1782 is governed by Federal Rule of Civil Procedure 26(b). *In re Barnwell Enterprises*, 265 F. Supp. 3d at 15 (the statute "explicitly empowers this Court to allow discovery to be taken and produced in accordance with the Federal Rules of Civil Procedure") (internal quotations omitted).

Accordingly, district courts retain "broad authority...to fashion discovery orders issued pursuant to section 1782." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 102 13 (2d. Cir. 1992); *see also HT S.R.L.*, 125 F. Supp. 3d at 227 ("A court may reject or modify unduly burdensome or intrusive requests."). Here, Applicant's discovery requests, a draft of which is attached to the application as Exhibit B, are narrowly tailored both in time and scope to

include only information likely to be relevant to the Australian Litigation.

As may be seen from Applicant's proposed subpoenas, the contemplated requests are limited to non-privileged documents and communications in the Ex-Im Bank's possession, custody or control, that concern the Financing Agreements and financing provided to the Plaintiff Companies pursuant to the Financing Agreements. This limited universe of information sought from the Ex-Im Bank is neither unduly intrusive nor burdensome, is directly relevant to Applicant's defenses in the Australian Litigation, and falls well within the broad scope of discovery permitted under the Federal Rules.

Applicant satisfies this fourth and final *Intel* prong.

## V. **CONCLUSION**

For the foregoing reasons, Applicant respectfully requests that the Court enter an Order granting leave to serve the Ex-Im Bank with the documents subpoenas attached to the application as Exhibit B.

Dated: February 26, 2018

Respectfully submitted,

*/s/ Nadia Patel*

Nadia Patel (Bar No. 1019170)
Nadia.patel@arentfox.com
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006-5344
Telephone: 202-857-6000
Facsimile: 202-857-6395

Attorneys for Applicant